UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ANN CAROLYN LONG, | ) | 1:07-cv-00346-SMS |
| | ) | |
| Plaintiff, | ) | DECISION AND ORDER DENYING |
| v. | ) | PLAINTIFF'S SOCIAL SECURITY |
| | ) | COMPLAINT (DOC. 8) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | ORDER DIRECTING THE ENTRY OF |
| Security, | ) | JUDGMENT FOR DEFENDANT MICHAEL J. |
| | ) | ASTRUE, COMMISSIONER OF SOCIAL |
| Defendant. | ) | SECURITY, AND AGAINST PLAINTIFF |
| | ) | ANN CAROLYN LONG |
| | ) | |

Plaintiff is represented by counsel and is proceeding with an action seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for disability insurance benefits (DIB) under Title II of the Social Security Act (Act). Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the Magistrate Judge to conduct all proceedings in this matter, including ordering the entry of final judgment.[1] The matter is currently before the Court on the parties' briefs,

---

[1] On May 1, 2007, the Honorable Lawrence J. O'Neill reassigned the case to the undersigned Magistrate Judge for all purposes.

1

which have been submitted without oral argument to the Honorable
Sandra M. Snyder, United States Magistrate Judge.

I. <u>Procedural History</u>

On February 2, 2004, Plaintiff applied for Disability
Insurance Benefits (DIB), alleging disability since June 10,
2003, due to her sciatic nerve, feeling weak at times, and a
heart condition. (A.R. 64-66, 75.) After Plaintiff's claim was
denied initially and on reconsideration, Plaintiff requested a
hearing; she appeared with counsel and testified at a hearing
before the Honorable William C. Thompson, Jr., Administrative Law
Judge (ALJ) of the Social Security Administration (SSA), on
January 10, 2006. (A.R. 14, 21-22, 272-95.) On August 10, 2006,
the ALJ denied Plaintiff's application for benefits. (<u>Id.</u> at 14-
18.) After the Appeals Council denied Plaintiff's request for
review on January 3, 2007, Plaintiff filed the complaint in this
action on March 2, 2007, and an amended complaint on March 16,
2007. (<u>Id.</u> at 5-7.) Briefing commenced on October 30, 2007, and
was completed on November 8, 2007, with the filing of Defendant's
opposition.

II. <u>Standard and Scope of Review</u>

Congress has provided a limited scope of judicial review of
the Commissioner's decision to deny benefits under the Act. In
reviewing findings of fact with respect to such determinations,
the Court must determine whether the decision of the Commissioner
is supported by substantial evidence. 42 U.S.C. § 405(g).
Substantial evidence means "more than a mere scintilla,"
<u>Richardson v. Perales</u>, 402 U.S. 389, 402 (1971), but less than a
preponderance, <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119, n. 10

2

1   (9th Cir. 1975). It is "such relevant evidence as a reasonable

2   mind might accept as adequate to support a conclusion."

3   Richardson, 402 U.S. at 401. The Court must consider the record

4   as a whole, weighing both the evidence that supports and the

5   evidence that detracts from the Commissioner's conclusion; it may

6   not simply isolate a portion of evidence that supports the

7   decision. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir.

8   2006); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). It

9   is immaterial that the evidence would support a finding contrary

10  to that reached by the Commissioner; the determination of the

11  Commissioner as to a factual matter will stand if supported by

12  substantial evidence because it is the Commissioner's job, and

13  not the Court's, to resolve conflicts in the evidence. Sorenson

14  v. Weinberger, 514 F.2d 1112, 1119 (9th Cir. 1975).

15      In weighing the evidence and making findings, the

16  Commissioner must apply the proper legal standards. Burkhart v.

17  Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must

18  review the whole record and uphold the Commissioner's

19  determination that the claimant is not disabled if the

20  Commissioner applied the proper legal standards, and if the

21  Commissioner's findings are supported by substantial evidence.

22  See, Sanchez v. Secretary of Health and Human Services, 812 F.2d

23  509, 510 (9th Cir. 1987); Jones v. Heckler, 760 F.2d at 995. If

24  the Court concludes that the ALJ did not use the proper legal

25  standard, the matter will be remanded to permit application of

26  the appropriate standard. Cooper v. Bowen, 885 F.2d 557, 561 (9th

27  Cir. 1987).

28  //////

3

III. <u>Disability</u>

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 1382c(a)(3)(A). A claimant must demonstrate a physical or mental impairment of such severity that the claimant is not only unable to do the claimant's previous work, but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. 1382c(a)(3)(B); <u>Quang Van Han v. Bowen</u>, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden of establishing a disability is initially on the claimant, who must prove that the claimant is unable to return to his or her former type of work; the burden then shifts to the Commissioner to identify other jobs that the claimant is capable of performing considering the claimant's residual functional capacity, as well as her age, education and last fifteen years of work experience. <u>Terry v. Sullivan</u>, 903 F.2d 1273, 1275 (9th Cir. 1990).

The regulations provide that the ALJ must make specific sequential determinations in the process of evaluating a disability: 1) whether the applicant engaged in substantial gainful activity since the alleged date of the onset of the impairment, 20 C.F.R. § 404.1520 (2006);[2] 2) whether solely on the basis of the medical evidence the claimed impairment is severe,

---

[2] All references are to the 2006 version of the Code of Federal Regulations unless otherwise noted.

that is, of a magnitude sufficient to limit significantly the individual's physical or mental ability to do basic work activities, 20 C.F.R. § 404.1520(c); 3) whether solely on the basis of medical evidence the impairment equals or exceeds in severity certain impairments described in Appendix I of the regulations, 20 C.F.R. § 404.1520(d); 4) whether the applicant has sufficient residual functional capacity, defined as what an individual can still do despite limitations, to perform the applicant's past work, 20 C.F.R. §§ 404.1520(e), 404.1545(a); and 5) whether on the basis of the applicant's age, education, work experience, and residual functional capacity, the applicant can perform any other gainful and substantial work within the economy, 20 C.F.R. § 404.1520(f).

Here, the ALJ found that Plaintiff had severe impairments of arthritis of the lumbar spine and right knee, but she did not have an impairment or combination thereof that met or medically equaled a listed impairment; Plaintiff retained the residual functional capacity (RFC) to sit and stand and/or walk for six hours in an eight-hour workday, with the requirement to change positions during usual break periods; lift and carry thirty pounds occasionally and twenty pounds frequently; and stoop, crouch, and climb ramps or stairs occasionally but never climb ladders. Plaintiff could perform her past relevant work as an accounting clerk, and thus Plaintiff was not disabled. (A.R. 16-18.)

IV. Residual Functional Capacity

Plaintiff argues that the RFC assigned to Plaintiff was not supported by substantial evidence; the ALJ erred in giving little

weight to the opinion of Plaintiff's treating physician, Dr.
Smith, and in concluding that Plaintiff could perform her past
relevant work of an accounting clerk based on the opinions of
consulting, examining physician Dr. Gable and state agency
medical consultant Dr. John T. Bonner.

A. <u>Medical Records</u>

Plaintiff's medical records include entries for her cardiac
condition as well as her spine and right knee. Plaintiff does not
raise any issues concerning the ALJ's findings about her cardiac
condition. Because Plaintiff's contentions concern only opinions
of medical sources bearing on Plaintiff's back and knee, the
Court will not refer to the medical record relating solely to
Plaintiff's cardiac condition.

With respect to Plaintiff's back and knee problems, an x-ray
of the lumbar spine taken May 20, 2003, revealed discogenic
disease of the fifth and "questionably" the fourth lumbar disc
spaces with facet arthropathy in the lower lumbar region with
minimal anterolisthesis of L4 upon L5; there was no evidence of
spondylolysis or other abnormalities. (A.R. 199.)

An MRI of the lumbar spine taken June 20, 2003, revealed L4-
5 moderately advanced bilateral facet arthropathy with mild
diffuse disc bulge but with no localizing protrusion or foraminal
or canal stenosis; and L5-S1 advanced intervertebral
osteochondrosis, diffuse disc bulge/marginal osteophyte with
facet arthropathy, moderate left and mild right foraminal
stenosis, and no central canal stenosis at any level. (A.R. 133-
34.)

Between November and July 20, 2004, Plaintiff was treated by

Susie Suh, M.D., with medication and physical therapy for back and knee pain. Plaintiff generally improved; there was no vertebral tenderness or positive signs with straight leg raising in November 2003 (A.R. 175); Plaintiff also had full knee extension and flexion and full toe/heel walking in November 2003 (A.R. 174). In January 2004, there was no vertebral tenderness, but the sciatic notch was tender on the right; notes for "neuro" indicate "full motor"; Plaintiff was to continue with exercise and medication. (A.R. 173.) In February 2004, Plaintiff complained that her medications and physical therapy had not helped; there was no vertebral tenderness or sign on straight leg raising; forward flex was to knees only. The doctor noted that an MRI had been done, and there was to be a referral for evaluation. (A.R. 172.)

On May 8, 2004, consulting examiner Dr. C. E. Gable, who was board certified in internal medicine, examined Plaintiff and prepared an internal medicine report. (A.R. 157-59.) Dr. Gable found that Plaintiff's muscles were all well developed with no atrophy. There was no clubbing, cyanosis, or edema in Plaintiff's extremities; both knees could be flexed maximally with no crepitation, and there was no deformity, swelling, or redness; straight leg raising was negative with sixty-five degrees lying; Plaintiff walked very slowly across the room but without a limp, and she reported that she could not walk on her toes because of back pain. Dr. Gable found that Plaintiff's neck was supple, and grip strength and range of motion about her neck and upper extremities was normal. Plaintiff could anteflex to ninety degrees but complained of back pain. There was diffuse tenderness

over the right lumbosacral area but no significant spasm; extension at the lumber area was possible about zero to twenty degrees, and lateral flexion about the same. Deep tendon reflexes were brisk and symmetrical. Dr. Gable's impression was low back pain with the eleven-month-old MRI showing intervertebral osteochondrosis suggesting significant arthritic problems but certainly not nerve impingement. Although Plaintiff complained of knee pain, there was no crepitation, deformity, heat, swelling, or redness about the knees, and both knees could be flexed maximally without crepitation. Dr. Gable opined that Plaintiff could sit up to six hours a day with usual breaks; he stated, "I think certainly that she should be able to move about and stand up and sit down as necessary." (A.R. 159.) Plaintiff could stand and/or walk probably up to six hours a day, but "she did so at her own pace, stop when she wishes to." (Id.) She could lift, push, or pull twenty pounds frequently and thirty pounds occasionally, with occasional squatting and bending, and only one flight of stairs at a time.

On June 22, 2004, state agency medical consultant Dr. John T. Bonner reviewed Plaintiff's file and documented his opinion. (A.R. 160-67, 236-39.) He opined that due to Plaintiff's degenerative disc disease and arthritis of the lumbar spine, as well as her hypertension and minimal coronary artery disease, Plaintiff could lift and/or carry thirty pounds occasionally and twenty pounds frequently, and she could stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday. Plaintiff could sit with normal breaks for a total of about six hours in an eight-hour work day, but she "must be able

8

to move about, stand/walk, and sit as she finds necessary and at
her own pace, but only usual breaks, not additional," due to back
pain. (A.R. 161.) She could only occasionally stoop, crouch, and
climb stairs and ramps, but never climb a ladder or rope. The
doctor concluded that the severity or duration of the symptoms
was disproportionate to the expected severity or duration on the
basis of Plaintiff's medically determinable impairments;
subjective symptomatology and limitations on activities of daily
living were not fully supported by the medical evidence of
record, and the fatigue complaints were not supported. (A.R.
165.) The doctor instructed the reader to see the attached
addendum (A.R. 167.) The addendum appears to be at A.R. 236-39,
where the consultation request for June 21, 2004, notes that
Plaintiff would need to be able to change positions and move
about as necessary to relieve back pain, and thus it appeared
that Plaintiff might be considered less than sedentary (i.e., to
have a RFC for less than a sedentary work). (A.R. 239.) Dr.
Bonner wrote that Plaintiff did have low back pain with plain x-
ray and MRI evidence of L5 spondylosis, but it was not that
severe, and there was no radiculopathy. (A.R. 239.) He noted that
just as with Plaintiff's low back pain, with respect to
Plaintiff's claimed coronary problems, Plaintiff could do more
than she claimed, and she could "well do light RFC, at least."
(Id.)

     In June 2004, Plaintiff still felt unable to return to work;
Dr. Suh's exam revealed no vertebral tenderness and good range of
motion in the knees, with tenderness to palpation at the joint
spaces. Cortisone for the knees and aquatics were prescribed.

(A.R. 171.)

In July 2004, Dr. Suh found good range of motion of the right hip with some guarding, no vertebral tenderness in the back, and no signs at strait leg raising; x-rays were ordered. (A.R. 170.) X-rays taken on July 21, 2004, of the lumbar spine revealed severe degenerative loss of disc space at L5-S1 and mild disc space narrowing at L4-5; other disc spaces were normal; the impression was lower lumbar facet joint osteoarthritis, stable grade I anterolisthesis of L4 on L5, and osteopenia. (A.R. 169.) As to the right hip, there was a negative right hip joint, mild pelvic enthesopathy, and osteopenia. (Id.)

On September 13, 2004, another state agency medical consultant affirmed Dr. Bonner's assessment after a review of it and of all the evidence in the file. (A.R. 167.)

In April 2005, Plaintiff visited a new treating physician, Dr. Steven A. Smith, M.D. (A.R. 253.) In May 2005, Dr. Smith found that Plaintiff's knees exhibited changes consistent with bilateral knee arthritis, with full range of motion and bilateral crepitus with range of motion, but no locking or catching; he prescribed topical Capsaicin cream and Vicodin 5/500, to be used sparingly. (A.R. 251.)

On August 4, 2005, Plaintiff was examined by Dr. Smith for complaints that included pain in the right knee and hip and radiating from her right back down the thigh. (A.R. 248-49.) The musculoskeletal and neurologic exams were noncontributory. There was no tenderness over the spinous processes, no paraspinous muscle spasm, full range of motion with flexion, extension, and rotation, and no costovertebral angle tenderness. Straight leg

10

raising was negative; strength in the lower extremity bilaterally
was 5/5. McMurray's test was positive on the right; there was an
obvious bony deformity of the knees bilaterally, a 1+ effusion on
the left, and a 2+ effusion on the right without increased
warmth. Lachman and posterior drawer testing were negative
bilaterally; there was no instability with valgus or varus
stress. The assessment was right knee osteoarthritis, for which
Vicodin and Advil were prescribed; and right-sided sciatica, for
which Neurontin and Advil were prescribed. (Id.)

On January 4, 2006, Dr. Smith completed a medical report and
assessment of Plaintiff based on his treatment of her from April
2005 through December 19, 2005, for hip, back, and knee pain.
(A.R. 264-68.) Clinical findings stated by Dr. Smith included a
minimally tender right hip over the posterior; knees crepitant,
4/5 strength, with weakly positive right-sided lift-off test; and
the back was mildly tender over the sciatic notch. (A.R. 264.)
Laboratory findings included an x-ray of the knee that showed a
narrowed joint space consistent with arthritis. The diagnosis was
right sciatica, chronic low back pain, knee arthritis, and
fibromyalgia; treatment was narcotics and NSAIDS. Response to
treatment was fair, as was the prognosis, in which Dr. Smith
stated that Plaintiff needed MRI imaging and orthopedic
evaluation. (A.R. 264.) Plaintiff could lift and carry no more
than ten pounds, which she could lift continuously and
occasionally; Dr. Smith stated that the right shoulder limited
lifting more, and hip and back pain limited carrying. (A.R. 265.)
Plaintiff could sit, stand, and walk eight hours total in an
eight-hour work day, but positional changes were required every

11

ten to fifteen minutes due to sciatic pain. (A.R. 266.) Because

of back and intermittent sciatic pain, Plaintiff could never

climb; she could occasionally stoop, crouch, and kneel; reaching,

pushing, and pulling would worsen her sciatica and knee symptoms,

so she could only occasionally reach and push or pull. (A.R.

267.) There were no other restrictions.

          B. Dr. Smith's Opinion

          Plaintiff argues that the ALJ erred in failing to adopt the

opinions of Plaintiff's treating physicians.

          The standards for evaluating treating source's opinions are

as follows:

> By rule, the Social Security Administration favors
> the opinion of a treating physician over
> non-treating physicians. See 20 C.F.R. § 404.1527.
> If a treating physician's opinion is
> "well-supported by medically acceptable clinical
> and laboratory diagnostic techniques and is not
> inconsistent with the other substantial evidence
> in [the] case record, [it will be given]
> controlling weight." Id. § 404.1527(d)(2). If a
> treating physician's opinion is not given
> "controlling weight" because it is not
> "well-supported" or because it is inconsistent
> with other substantial evidence in the record, the
> Administration considers specified factors in
> determining the weight it will be given. Those
> factors include the "[l]ength of the treatment
> relationship and the frequency of examination" by
> the treating physician; and the "nature and extent
> of the treatment relationship" between the patient
> and the treating physician. Id. §
> 404.1527(d)(2)(i)-(ii). Generally, the opinions of
> examining physicians are afforded more weight than
> those of non-examining physicians, and the
> opinions of examining non-treating physicians are
> afforded less weight than those of treating
> physicians. Id. § 404.1527(d)(1)-(2). Additional
> factors relevant to evaluating any medical
> opinion, not limited to the opinion of the
> treating physician, include the amount of relevant
> evidence that supports the opinion and the quality
> of the explanation provided; the consistency of
> the medical opinion with the record as a whole;
> the specialty of the physician providing the

> opinion; and "[o]ther factors" such as the degree
> of understanding a physician has of the
> Administration's "disability programs and their
> evidentiary requirements" and the degree of his or
> her familiarity with other information in the case
> record. Id. § 404.1527(d)(3)-(6).

Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007).

As to the legal sufficiency of the ALJ's reasoning, the governing principles have been recently restated:

> The opinions of treating doctors should be given more
> weight than the opinions of doctors who do not treat
> the claimant. Lester [v. Chater, 81 F.3d 821, 830 (9th
> Cir.1995) (as amended).] Where the treating doctor's
> opinion is not contradicted by another doctor, it may
> be rejected only for "clear and convincing" reasons
> supported by substantial evidence in the record. Id.
> (internal quotation marks omitted). Even if the
> treating doctor's opinion is contradicted by another
> doctor, the ALJ may not reject this opinion without
> providing "specific and legitimate reasons" supported
> by substantial evidence in the record. Id. at 830,
> quoting Murray v. Heckler, 722 F.2d 499, 502 (9th
> Cir.1983). This can be done by setting out a detailed
> and thorough summary of the facts and conflicting
> clinical evidence, stating his interpretation thereof,
> and making findings. Magallanes [v. Bowen, 881 F.2d
> 747, 751 (9th Cir.1989).] The ALJ must do more than
> offer his conclusions. He must set forth his own
> interpretations and explain why they, rather than the
> doctors', are correct. Embrey v. Bowen, 849 F.2d 418,
> 421-22 (9th Cir.1988).
> Reddick v. Chater, 157 F.3d 715, 725 (9th Cir.1998);
> accord Thomas, 278 F.3d at 957; Lester, 81 F.3d at
> 830-31.

Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007).

Here, the ALJ found that Plaintiff could lift and carry thirty pounds occasionally and twenty pounds frequently; sit and stand and/or walk for six hours in an eight-hour work day with a requirement to change positions during usual break periods; and only occasionally stoop, crouch, and climb ramps or stairs but never climb ladders. (A.R. 16.) The ALJ noted Dr. Smith's opinion of January 2006, which required "positional changes every 10 to

15 minutes," (A.R. 17), and he stated:

> I give little weight to Dr. Smith's assessment as there
> is a lack of objective support for the restrictions
> given, including support from the doctor's own
> treatment notes. Dr. Smith wrote that the claimant's
> lifting restriction was the result of a left shoulder
> impairment (Exhibit 9F/2). However, an examination of
> Dr. Smith's treatment notes shows no treatment nor
> complaint involving the claimant's left shoulder
> (Exhibit 8F). Also, there is no objective basis for
> a requirement of frequent positional changes. Additionally,
> the doctor's treatment notes contain no imaging of
> the claimant's knee and back, suggesting that these
> conditions were not so severe as to require such action.
> Although testing was performed on the claimant's heart,
> the results were mostly normal, including normal ejection
> fraction (Exhibit 8F/19, 21). Dr. Smith wrote that the
> claimant had an occasional irregular heartbeat "which
> was not severe" and occasional shortness of breath,
> which the claimant described as non-severe (Exhibit 8F/14).
> I find no necessity to recontact Dr. Smith for clarification
> as the claimant's representative stated at the hearing
> that all relevant medical evidence had been submitted.
>
> Another reason to reject Dr. Smith's opinion is that he
> apparently did not feel the claimant's condition was
> severe enough to refer the claimant to a specialist
> for her back and knee. Furthermore, Dr. Smith's treatment
> notes do no[t] contain any functional limitations. This
> omission suggests he did not think that claimant's
> conditions to be so severe as to warn the claimant
> not to engage in certain physical activities.

(A.R. 18.)

Here, the ALJ expressed his evaluation that Dr. Smith's

assessment was inconsistent with the objective medical evidence.

As the foregoing summary of the medical evidence of record

demonstrates, substantial evidence supported the ALJ's

evaluation.

Objective findings concerning Plaintiff's back were limited

to discogenic disease (lower lumbar facet joint osteoarthritis),

with facet arthropathy absent stenosis at L4-L5, moderate left

and mild right foraminal stenosis at L5-S1, and no central canal

stenosis at any level; the latest films in July 2004 reflected

only severe loss of disc space at L5-S1 and mild loss at L4-5, along with stable grade I anterolisthesis of L4 on L5. (A.R. 133-34, 199.) Dr. Suh's notes from 2004 reflect essentially mild signs with no vertebral tenderness or signs on straight leg raising; there was only tenderness of the sciatic notch on the right, with full motor function. (A.R. 170-75.) Dr. Bonner opined that Plaintiff's subjective claims were not supported by the medical evidence of record; Plaintiff's condition at L5 was not that severe, and there was no radiculopathy. (A.R. 239.) In May 2004, Dr. Gable opined that the MRI findings suggested significant arthritic problems but not nerve impingement. (A.R. 159.) Dr. Smith's notes either reflect mild or no findings in 2005, including no tenderness over the spinous processes, no paraspinous muscle spasms, full range of motion with flexion, extension, and rotation; negative straight leg raising; and only one finding of mild paraspinous muscle spasm in the thoracic spine and more prominent spasm over the trapezius. (A.R. 248-49, 253.)

    Objective findings concerning Plaintiff's knee were likewise mild. Plaintiff had full knee flexion and extension in November 2003. (A.R. 174.) In May 2004, Dr. Gable encountered knees that permitted maximal flexion with no crepitation, deformity, swelling, redness, or limp; the MRI findings suggested significant arthritic problems but not nerve impingement. (A.R. 159.) In June 2004, Dr. Suh found good range of motion in the knees, with tenderness to palpation at the joint spaces. (A.R. 171.) Dr. Smith found full range of motion with bilateral crepitus but without locking or catching, and unspecified changes

consistent with bilateral knee arthritis in April 2005. (A.R. 251.) In August 2005, Dr. Smith found lower extremity strength of 5/5 bilaterally; although he found McMurray's test positive on the right, with a bony deformity and effusions without increased warmth, he also found Lachman and posterior drawer testing negative bilaterally with no instability with valgus or varus stress. (A.R. 248-49.)

In summary, the record contains substantial evidence supporting the ALJ's characterization of the objective medical evidence of record as not supporting Dr. Smith's restrictions. The SSA will generally give more weight to an opinion to the extent that it is more consistent with the record as a whole. 20 C.F.R. § 404.1527(d)(4).

It is established that it is appropriate for an ALJ to consider the absence of supporting findings, and the inconsistency of conclusions with the physician's own findings, in rejecting a physician's opinion. Johnson v. Shalala, 60 F.3d 1428, 1432-33 (9th Cir. 1995); Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). A conclusional opinion that is unsubstantiated by relevant medical documentation may be rejected. See Johnson v. Shalala, 60 F.3d 1428, 1432-33 (9th Cir. 1995).

Here, the ALJ also relied on the lack of findings within Dr. Smith's own notes that would support Dr. Smith's restrictions. (A.R. 17.) Again, Dr. Smith's findings were essentially mild. His own findings stated as the basis for his restrictions were minimal or mild tenderness over the right hip and sciatic notch, and crepitus, slightly diminished strength, a weakly positive

1  lift-off test, and reference to an x-ray indicating narrowed
2  joint space consistent with arthritis of the knees. The ALJ's
3  reliance was reasonable, particularly in light of the absence of
4  the doctor's process of reasoning from the mild findings to an
5  assessment of inability to perform even sedentary work. The SSA
6  will consider the supportability of an opinion; the more a source
7  presents relevant evidence to support an opinion, particularly
8  medical signs and laboratory findings, or the better the source
9  explains the opinion, the more weight the opinion will be given.
10  20 C.F.R. § 404.1527(d)(3). The ALJ considered the extent to
11  which the treating physician's opinion was consistent with the
12  medical evidence, and he stated specific and legitimate reasons,
13  supported by substantial evidence in the record, for placing less
14  weight on Dr. Smith's opinion.

15  The ALJ specifically noted the lack of record support for
16  Dr. Smith's imposing a limitation on lifting based on Plaintiff's
17  left shoulder impairment, noting that Dr. Smith's treatment notes
18  did not reflect complaint or treatment for the left shoulder.
19  (A.R. 17-18.) Substantial evidence does not support this finding.
20  Dr. Smith limited Plaintiff's lifting and stated that there was
21  no left shoulder impairment, but that the right shoulder limited
22  lifting. (A.R. 265.) A treatment note from April 5, 2005,
23  reflects a reference to the right or bilateral shoulder (the
24  character is unclear), with an arrow pointing to the word "trap,"
25  followed by the words "muscle strain." (A.R. 254.) Further, a
26  prominent thoracic spasm was noted over the trapezius up into the
27  neck musculature. (A.R. 253.) Because this reason is not
28  supported by substantial evidence, the Court will not address

Plaintiff's additional contention that observations concerning the shoulder are not significant because it is Plaintiff's knee and/or spinal impairments that are or were being considered. However, in view of the ALJ's statement of multiple specific, legitimate reasons that were supported by substantial evidence, the weakness of this particular reasoning is not dispositive.

The ALJ also drew inferences from the nature of Dr. Smith's treatment of Plaintiff, concluding that his failure to refer Plaintiff to a specialist for her back and knee, and his lack of any imaging results regarding Plaintiff's knee and back, warranted an inference that Dr. Smith did not consider Plaintiff's impairment to be so severe as to warrant his functional assessment, and/or that Plaintiff's impairment was not as severe as Dr. Smith assessed. (A.R. 18.)

An ALJ is entitled to draw inferences logically flowing from the evidence. <u>Sample v. Schweiker</u>, 694 F.2d 639, 642 (9th Cir. 1982). The ALJ had noted in connection with his rejection of Plaintiff's subjective complaints of disabling pain that there were significant gaps in Plaintiff's history of treatment. (A.R. 17.) The ALJ further relied on the absence of any diagnostic work-up of Plaintiff's allegedly disabling back and knee impairments. The record reveals that Plaintiff was referred to numerous specialists during the ten months covered by Dr. Smith's treatment notes, including a cardiologist in April 2005 (A.R. 260-62); an ear, nose, and throat specialist for dryness in her throat and heartburn in May 2005 (A.R. 259-60); a radiologist for an esophagram in June 2005 (A.R. 255); and specialists for an echocardiogram and treadmill tests in August 2005 (A.R. 256-58).

1    In contrast, despite Plaintiff's complaints of constant pain
2 associated with her back and knees, the doctor did not refer
3 Plaintiff to an orthopedist or to specialists for diagnostic
4 studies; it was not until he actually reported Plaintiff to be
5 unable to engage even in sedentary work in January 2006, some ten
6 months after his first visit from Plaintiff, that he first even
7 adverted to the need for diagnostic tests or specialists'
8 assessments by stating that Plaintiff needed MRI imaging and an
9 orthopedic evaluation. (A.R. 264.)

10    In light of the marked contrast between Dr. Smith's handling
11 of Plaintiff's conditions involving her throat, digestion, and
12 various aspects of Plaintiff's cardiovascular condition, and the
13 doctor's handling of Plaintiff's back and knee impairments, it
14 was reasonable for the ALJ to draw the inference that the latter
15 impairments were not sufficiently serious, or considered
16 sufficiently serious, to merit follow-up from specialists or to
17 warrant precise diagnostic information, and thus were not
18 disabling.

19    In addition, the familiarity of a physician with the
20 claimant's medical condition is pertinent to the evaluation of an
21 opinion. Factors considered in evaluating the treatment
22 relationship include the extent of knowledge the medical source
23 has about the impairment, the treatment provided, and the kinds
24 and extent of examinations and testing ordered or performed by
25 the source or by specialists and independent laboratories. It is
26 only when a treating source has reasonable knowledge of the
27 impairments that the SSA will give the source's opinion more
28 weight than if it were from a nontreating source. 20 C.F.R. §

1  404.1527(d)(2)(ii).

2      Here, the only evidence concerning any diagnostic imaging
3  that had occurred by the time Dr. Smith rendered the opinion in
4  question is a reference in Dr. Smith's summary of Plaintiff's
5  visit of May 3, 2005. There it is stated in the context of knee
6  complaints that Plaintiff reported that she was diagnosed in the
7  past with an x-ray six months before as having osteoarthritis for
8  which Ben Gay and commercial Icy Hot patches had provided relief.
9  (A.R. 251.) No party cites to evidence that Dr. Smith had, or
10 attempted to obtain copies of, previous reports or images, and
11 the Court is aware of no such evidence. The fact that Plaintiff
12 reported a past diagnosis of the general condition of
13 osteoarthritis in her knees did not give Dr. Smith the same
14 specificity, degree, and depth of knowledge about Plaintiff's
15 condition as would have been imparted by appropriate diagnostic
16 testing and examination and evaluation by an orthopedic
17 specialist. The ALJ's reasoning in this regard was specific and
18 legitimate and was supported by substantial evidence in the
19 record.

20     Further, the ALJ appropriately considered the treatment
21 given to Plaintiff by Dr. Smith, who basically provided
22 medication but did not impose any detailed functional limitations
23 on Plaintiff. Plaintiff testified that her doctor restricted her
24 from climbing or walking up a steep incline; she took Vicodin
25 once or twice daily and had to rest at least twice daily, but
26 even with the side-effects of her medication, she nevertheless
27 was able to dust, wipe the counters, cook with her husband's
28 help, do some laundry-related tasks, shop for ten to fifteen

minutes, walk five or ten minutes in front of her house, and sit for thirty or forty minutes if allowed to shift. (A.R. 283-91.) In view of Plaintiff's testimony regarding her daily activities, it was significant that her treating physician had not warned her about the many activities that he stated would exacerbate the symptoms of her condition. For example, Dr. Smith stated that with respect to postural activities, more than occasional reaching, pushing, or pulling would worsen Plaintiff's sciatica and her knee symptoms. (A.R. 267.) Further, back pain and intermittent sciatic pain were listed as the medical findings that supported his limitation of only occasional stooping, crouching, and kneeling. (A.R. 267.) The absence of these restrictions, when considered in the context of the entire record, warranted an inference that Plaintiff's condition was not severe enough to warrant restrictions.

The ALJ stated that there was no objective basis for a requirement of frequent positional changes. (A.R. 18.) In this case, the ALJ expressly found that Plaintiff's subjective complaints of disabling limitations were not fully credible or substantiated by medical evidence and consistent with the record as a whole, and that Plaintiff could perform light work. (A.R. at 24-25.) Plaintiff does not mount a proper, legal challenge to the sufficiency of the evidence supporting this finding or the adequacy of the ALJ's reasons given to explain the finding; there is no heading or direct assertion in Plaintiff's brief concerning such issues.

Plaintiff does state that the MRI of Plaintiff's lumbar spine, which showed moderately advanced bilateral facet

1  arthropathy at L4-5 and intervertebral osteochondrosis with facet

2  arthropathy and moderate left and mild right foraminal stenosis,

3  is an objective basis from which the Plaintiff's subjective

4  complaints can be gleaned, and determination of credibility be

5  found. However, it is not the role of this Court to redetermine

6  Plaintiff's credibility de novo; although evidence supporting an

7  ALJ's conclusions might also permit an interpretation more

8  favorable to the claimant, if the ALJ's interpretation of

9  evidence was rational, this Court must uphold the ALJ's decision

10 where the evidence is susceptible to more than one rational

11 interpretation. Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir.

12 2005). The review that this Court undertakes is not to discern

13 some evidence that might have tended to support a conclusion

14 contrary to the ALJ's; rather, the Court is to review the

15 reasoning of the ALJ to determine whether the ALJ's decision was

16 rendered pursuant to appropriate legal standards and was

17 supported by substantial evidence. Batson v. Commissioner of the

18 Social Security Administration, 359 F.3d 1190, 1196 (9th Cir.

19 2004).

20      Thus, the Court considers the ALJ's unchallenged credibility

21 findings to be binding. The Court notes that the ALJ provided

22 specific, cogent, clear, and convincing reasons for rejecting

23 specifically described subjective complaints of back and knee

24 pain, weakness, and inability to sit without pain. (A.R. at 17.)

25 The fact that an opinion is based primarily on the patient's

26 subjective complaints may be properly considered. Matney on

27 Behalf of Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992).

28 Where a treating source's opinion is based largely on the

1  Plaintiff's own subjective description of his or her symptoms,
2  and the ALJ has discredited the Plaintiff's claim as to those
3  subjective symptoms, the ALJ may reject the treating source's
4  opinion. Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989). Thus,
5  the ALJ's reliance here on the lack of objective evidence, as
6  distinct from subjective claims, with respect to the extent and
7  severity of Plaintiff's functional limitations, was reasonable.

8       As previously detailed, the record contains substantial
9  evidence supporting the ALJ's determination that there was a lack
10 of objective evidence supporting the nature and extent of the
11 limitations placed on Plaintiff. Although there may have been
12 some evidence that Plaintiff had an impairment that could produce
13 some limitations, the ALJ considered appropriate factors,
14 properly weighed the opinion of Dr. Smith, and concluded that
15 there was an absence of objective evidence supporting limitations
16 as extreme as those imposed by Dr. Smith, which the VE testified
17 would result in an absence of work that could be performed. (A.R.
18 292-94.) In the present case, it was appropriate and adequate for
19 the ALJ to determine that the level of impairment stated was
20 unreasonable in light of the symptoms and other evidence in the
21 record, and to set forth that analysis. See, Morgan v.
22 Commissioner of Social Security 169 F.3d 595, 601 (9th Cir. 1999).

23               C. Dr. Gable's Opinion

24      Plaintiff argues that the opinion of Dr. Gable was
25 consistent with Dr. Smith's opinion with respect to Plaintiff's
26 RFC, and that the ALJ's ultimate conclusion lacked the support of
27 substantial evidence in the record.

28      Consulting examiner Dr. Gable did conclude that Plaintiff

1  could sit up to six hours a day with usual breaks; he stated
2  immediately thereafter, "I think certainly that she should be
3  able to move about and stand up and sit down as necessary." (A.R.
4  159.) The ALJ characterized Dr. Gable's opinion as finding that
5  Plaintiff could sit for six hours with usual breaks and stand
6  and/or walk for six hours in an eight-hour day. (A.R. 17.) He
7  omitted the language concerning position changes as necessary.

8      The ALJ then stated the opinion of state agency consultant
9  Dr. Bonner, to the effect that Plaintiff could sit for six hours
10  and stand and/or walk for six hours "with position changes during
11  usual breaks." (A.R. 17.) The ALJ then stated that he gave
12  substantial weight to these opinions as they were consistent with
13  each other and consistent with the treatment record.

14      Plaintiff points to the fact that the opinions of Drs. Gable
15  and Bonner were inconsistent with respect to the need for a
16  sit/stand option outside of normal or usual breaks. If the ALJ's
17  characterization of the opinions as stated on page 17 of the
18  administrative record is the only part of the decision
19  considered, then it could be inferred that the ALJ misunderstood
20  the opinion of Dr. Gable or used faulty reasoning.

21      However, the Court will consider the entire decision, which
22  includes the ALJ's more detailed review of the RFC assessment
23  made by Dr. Smith, in which the ALJ expressly adverted to Dr.
24  Smith's conclusion that Plaintiff could sit and stand and/or walk
25  for eight hours in an eight-hour work day "with positional
26  changes every 10 to 15 minutes." (A.R. 17.) The ALJ expressly
27  rejected the assessment for lack of objective support; he clearly
28  stated that there was no objective basis for a requirement of

1  frequent positional changes. (A.R. 17-18.) As previously

2  detailed, substantial evidence supported this conclusion. The

3  Court agrees with Defendant, who notes that it is reasonable to

4  apply the ALJ's reasoning regarding the limitation stated by Dr.

5  Smith to the same limitation stated by Dr. Gable. The Court may

6  draw specific and legitimate inferences from the ALJ's reasons

7  for rejecting one doctor's limitation and impute those reasons to

8  the ALJ's rejection of another doctor's similar limitation. See,

9  Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989). Here, it

10 is clear that the ALJ considered the more restrictive RFC in

11 light of the entire record and found that it was without

12 objective support; absent the proviso about the sit/stand option,

13 the opinions of Drs. Gable and Bonner were essentially consistent

14 with respect to Plaintiff's capacity to sit, stand, walk, as the

15 ALJ noted.

16     Further, it is clear that the ALJ relied on the opinion of

17 state agency medical consultant Dr. Bonner, correctly

18 characterizing Dr. Bonner's assessed RFC as permitting sitting

19 for six hours and standing and/or walking for six hours in an

20 eight-hour work day with position changes during usual breaks.

21 (A.R. 17.)

22     Plaintiff speculates that the handwriting on the RFC

23 assessment of the state agency physician, which states that only

24 usual, and not additional, breaks were required for positional

25 changes, was added as an afterthought. (Brief at p. 10; A.R.

26 161.) However, the addendum concerning the consultation request

27 makes it clear that Dr. Bonner had carefully considered the

28 totality of the evidence summarized in the consultation request

1   and had concluded that Plaintiff's need to make any positional

2   changes could be accommodated with normal or usual breaks. (A.R.

3   236-39.)

4             D. Dr. Bonner's Opinion

5       Plaintiff argues that the opinion of Dr. Bonner does not

6   constitute substantial evidence to support the ALJ's conclusion

7   that Plaintiff could sit and stand and/or walk for six hours with

8   the need for position changes only during usual breaks. Plaintiff

9   contends that the opinion of Dr. Bonner cannot constitute

10  substantial evidence because it was based on the very same

11  clinical findings upon which the conflicting opinion of the

12  treating physician was based.

13      An ALJ may disregard a treating physician's opinion that is

14  controverted by other opinions only by setting forth specific,

15  legitimate reasons for doing so that are based on substantial

16  evidence in the record. Rodriguez v. Bowen, 876 F.2d 759, 762 (9th

17  Cir. 1989). This burden is met by stating a detailed and thorough

18  summary of the facts and conflicting clinical evidence, stating

19  the interpretation of the evidence, and making findings. Cotton

20  v. Bowen, 799 F.2d 1403, 1408 (9th Cir 1986). The opinion of an

21  examining physician is entitled to greater weight than the

22  opinion of a nonexamining physician. Lester v. Chater, 81 F.3d

23  821, 830 (9th Cir. 1995). The uncontradicted opinion of an

24  examining physician may be rejected only if the Commissioner

25  provides clear and convincing reasons for rejecting it. Id.;

26  Edlund v. Massanari, 253 F.3d 1152, 1158-59 (9th Cir. 2001). An

27  ALJ can reject the opinion of an examining physician and adopt

28  the contradictory opinion of a nonexamining physician only for

                                26

specific and legitimate reasons that are supported by substantial evidence in the record. Moore v. Commissioner of Social Security Administration, 278 F.3d 920, 925 (9th Cir. 2002) (quoting Lester v. Chater, 81 F.3d at 830-31).

The opinion of a nontreating, nonexamining physician can amount to substantial evidence as long as it is supported by other evidence in the record, such as where it is consistent with independent clinical findings or other evidence in the record, Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). The opinion of a non-examining doctor that conflicts with a treating doctor's opinion may constitute substantial evidence warranting rejection of the treating doctor's opinion where the non-examining doctor's opinion is based on opinions of other examining and consulting physicians, which are in turn based on independent clinical findings. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). Independent clinical findings can be either 1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, or 2) findings based on objective medical tests that the other physician has not himself or herself considered. Orn v. Astrue, 495 F.3d at 632.

Here, the record contains the consultation request of June 21, 2004, to which Dr. Bonner's evaluation and report responded. The request details the underlying data which Dr. Bonner considered, which included the x-rays of the lumbar spine from May 2003, the MRI from June 2003, and Dr. Gable's internal medicine examination and report from May 2004. (A.R. 236-39.) It is clear that Dr. Bonner's opinion was based on the opinions of another examining physician as well as clinical findings that

1  appear from the record to be independent from those relied on by

2  Dr. Smith. There is no evidence that Dr. Smith had any of these

3  underlying data to consider or that he considered any such data

4  in reaching his opinion. The Court thus concludes that Dr.

5  Bonner's opinion constituted substantial evidence supporting the

6  ALJ's conclusions concerning Plaintiff's RFC.

7      V. <u>Disposition</u>

8      Based on the foregoing, the Court concludes that the ALJ's

9  decision was supported by substantial evidence in the record as a

10 whole and was based on the application of correct legal

11 standards.

12     Accordingly, the Court AFFIRMS the administrative decision

13 of the Defendant Commissioner of Social Security and DENIES

14 Plaintiff's Social Security complaint.

15     The Clerk of the Court IS DIRECTED to enter judgment for

16 Defendant Michael J. Astrue, Commissioner of Social Security,

17 and against Plaintiff Ann Carolyn Long.

18 IT IS SO ORDERED.

19 **Dated:    February 29, 2008           /s/ Sandra M. Snyder**
                                    UNITED STATES MAGISTRATE JUDGE

20

21

22

23

24

25

26

27

28